Mr. Justice Wylie
stated the case, and delivered the opinion of the court:
Previous to the rebellion, Cornelius Boyle was a citizen of the District of Columbia, and owner of the property in controversy. In consequence of his active participation in that cause, his life-estate was confiscated and sold at the instance of the Government. At this sale John Van Biswickwas the purchaser. Subsequently Van Biswick conveyed the interest so purchased to Ward H. Lamon, the marshal by whom the sale was made.
The war having ended, Boyle returned, was pardoned by the President, conveyed all his right, title, and interest in this property to certain trustees for the benefit of his wife and children. The interest and estate of those trustees is, however, now vested in Elliot, one of the complainants.
Complainants claim that the sale made by Lamon, as marshal, to Van Biswick was void, as having been made in pur' suance of an arrangement previously entered into, as they charge, under which Van Biswick was to purchase the property and hold it for the benefit of Lamon.
But this feature of the bill requires no further consideration in this place, for the reason that the court below was of a different opinion upon the evidence, and so decided, and from that decision the complainants have not appealed. The validity of Lamon’s title to an estate in the property during the life-time of Cornelius Boyle is therefore to be here regarded as out of the controversy.
It is further stated in the bill that, since Lamon claims an estate in the property per autre vie under the confiscation sale, and as the inheritance is vested in the complainants, Lamon should be required to keep the property in repair, and *649 meet the taxes as they fall due, and that, in these respects, he has failed to perform his obligations, for which relief is prayed.
Itis objected that the bill is thus for several and distinct matters, and ought not to be sustained. But we consider the objection to be without any solid foundation. The bill is in the alternative, and seeks appropriate relief, according as the result may turn out to be, after the cause should be heard upon the proofs and the law; and this is not objectionable, but a common form of pleading, and, indeed, necessary for the purpose of economy in litigation. .
It appears by the testimony that the property has been yielding a rent of about $600 a year, but that Lamon has been very negligent about paying the taxes; and that, since it has been in his possession, it has been sold at least twice in consequence of this neglect; and that at the time of filing the bill a considerable amount of taxes, both general and special, were in arrears unpaid.
The court below passed a decree requiring the defendant Lamon to pay the amount of general taxes which were due and unpaid at the date of filing the bill, and decreed a sale of his interest, in case of his default for a period of thirty days.
It has been urged here that this decree was erroneous for the reason that the complainant’s estate in expectancy is, and can be, in no jeopardy from the default of the tenant for life as to paying the taxes upon the property, because his life-estate is all that could be sold in consequence of such neglect; and we are referred to the last proviso of the 10th section of the charter of 1820 as authority for this proposition. That proviso is in these words: “And provided moreover that where the estate of the tenant in default, as for years, or for life, or lives, shall be sufficient to defray the taxes chargeable thereupon, such estate only shall be liable to be sold under the provisions of this act.”
By other preceding provisions of this law the land itself, without respect to the several interests which might be carved out of it, was made subject to taxation and liable to sale in case the taxes were unpaid. This proviso is, in our judgment, entirely consistent with those other provisions of the act. If the life-interest be “ sufficient ” to pay the taxes, *650 nothing more shall be sold. Bat how would it be if the life-interests were not sufficient ? Clearly, the collector was in' that case required to sell the land itself and make an absolute fee-simple title to the purchaser. The value of a life-estate, in consequence of age or infirmity, might be much, less than the amount of taxes; or where these obstacles were not present the uncertainty of its duration, at best, might prevent a sale. In either of these cases the collector has-authority to sell the whole estate. It is not unlike the case of the owner of several lots, one of which has been sold for enough to pay the taxes’on all. There the collector can sell no-more than the one. That does not prove, however, that the tax assessed to each is not a lien upon each. In the present, instance, the aggregate sum of the general taxes in arrear and unpaid, together with the legal charges and interest, was-$1,022.62. The annual rent from the property has been $600.99, without- allowance for repairs or insurance. It is quite improbable, we think, that the life-interest owned by the defendant in this property would bring at a tax-sale the amount of the arrears. The life-interest vested in the defendant is not an interest for his own life, but for that of Cornelius Boyle.
It is manifest, therefore, that if these arrears of taxes which, have been accumulating since 1865, and each year with an increased ratio, are to remain unpaid by the tenant for life, and increase from year to year, the whole burden may ultimately fall upon the estate of these complainants.
There is no question as to the personal liability of the de- . fendant to meet these charges. He is the owner of a life-interest in the property, and is in the enjoyment of its rents and profits, which are considerable. The life-estate is precarious at least, becoming every day less and less valuable, and the interests of those in expectancy require immediate and adequate protection.
That a court of equity possesses jurisdiction to apply the remedy in such a case as the present is not to be doubted. In 1 Story’s Eq., secs. 483 and 484, the author says: “ But a more beneficial exercise of equity jurisdiction in cases of apportionment and contribution is in cases where incumbrances, fines, and other charges on real estate are required to be paid *651 off, or are actually paid off, by some of the parties in interest.”' “ This may be illustrated by one of the most common cases, that of an apportionment and contribution toward a mortgage upon an estate where the interest is required to be kept down, or the incumbrance paid.” So in Smith’s Manual of Equity, 340, it is said: “An apportionment maybe made either of a benefit, or of an incumbrance, loss, expense, of liability; and in case of apportionment of the latter class, a corresponding contribution is enforced consequent upon such an apportionment.”
In the present instance, the District of Columbia is one of the parties defendant, the amount of the incumbrance is ascertained, the liability of the defendant for its payment is not disputed, and the contribution may and, we think, ought to-be enforced.
Decree affirmed.